UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Nathaniel Noel Bradley,<br><br>Petitioner,<br><br>v.<br><br>Warden of Turbeville Correctional Institution,<br><br>Respondent. | C/A No. 9:24-cv-07067-JDA-MHC<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Nathaniel Noel Bradley ("Petitioner"), a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment ("Motion"). ECF Nos. 39, 40. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of the Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 41. Petitioner filed a Response in Opposition, ECF No. 54, and Respondent filed a Reply, ECF No. 55. The matter is ripe for review.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion, ECF No. 40, be granted, and that the Amended Petition, ECF No. 15, be dismissed with prejudice.

## BACKGROUND

The procedural history as described by Respondent has not been disputed by Petitioner and is set forth as follows. *See* ECF No. 54 at 1 ("Petitioner hereby adopts the Procedural History [provided by the Respondent] in its entirety[.]") Petitioner currently is confined in the South Carolina Department of Corrections.

## I. State Criminal Case

During the January 2008 term, the Sumter County Grand Jury indicted Petitioner for murder and possession of a weapon during the commission of a violent crime. ECF No. 39-9 at 157–58 (2007-GS-43-390).

On January 14–18, 2008, Petitioner proceeded to a jury trial with the Honorable R. Ferrell Cothran, Jr., presiding. ECF No. 39-1 at 4. Public Defender Ernest Finney represented Petitioner, and Assistant Solicitor Catherine Fant prosecuted the case. *Id.* At the conclusion of trial, the jury found Petitioner guilty of murder and acquitted Petitioner of the weapons charge. ECF No. 39-6 at 67–71. Judge Cothran sentenced Petitioner to 30 years with credit for time served. ECF No. 39-6 at 82; ECF No. 39-9 at 159.

Petitioner, through counsel, timely filed a notice of appeal. Appellate Defender Joseph L. Savitz, III, perfected the appeal and raised the following issue: "The trial judge erred by denying [Petitioner] a directed verdict, as there was no direct evidence or substantial circumstantial evidence reasonably tending to prove that he had killed Ernest James." ECF No. 39-6 at 87.

On November 8, 2010, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence pursuant to Rule 220(b)(1), SCACR. ECF No. 39-6 at 125–26. Petitioner filed a Petition for Rehearing, ECF No. 39-6 at 127, which the Court of Appeals denied on December 30, 2010, ECF No. 39-6 at 129.

Petitioner filed a Petition for Writ of Certiorari in the South Carolina Supreme Court on April 1, 2011. ECF No. 39-6 at 130–42. The State submitted its Return to the Petition on July 12, 2011. ECF No. 39-6 at 143–72. The South Carolina Supreme Court denied the petition by Order on June 21, 2012. ECF No. 39-6 at 173. The Remittitur was issued on July 5, 2012. ECF No. 39-6 at 174.

## II. Post-Conviction Relief Action

On July 27, 2012, Petitioner filed an application for post-conviction relief ("PCR"), asserting that counsel was ineffective for failing to investigate his case by not interviewing potential witnesses and citing *Ard v. Catoe*, 642 S.E.2d 590, 597 (S.C. 2007). ECF No. 39-6 at 175–81.

Petitioner amended his application through counsel F. Casey D. Cornwell on September 19, 2013, raising the following allegations:

> I. Ineffective assistance of trial counsel for failure to properly prepare and investigate, specifically, but not limited to the following claims:
>
> > a. Failure to review and explain the complete discovery materials to Applicant prior to trial;
> >
> > b. Failure to conduct an independent investigation into the evidence and witnesses that formed the State's case against Applicant;
> >
> > c. Failure to call witnesses whose testimony was vital to client's defense. Specifically failure to obtain expert witnesses to analyze the cell phone information and the wreckage of the burnt car.

ECF No. 39-6 at 187.

On April 9, 2015, Applicant, through counsel Bradley M. Kirkland, again amended his application to include the following grounds:

> 1. Trial Counsel erred when he failed to move to quash the arrest warrant on the basis that the information in the warrant was demonstrably false and therefore the magistrate issued the warrant based on false information. The warrant claimed that [Petitioner] committed the murder in Sumter County and an eyewitness placed [Petitioner] at the scene of the crime. However, at trial Investigator McMillan admitted that he had no evidence that the victim was killed in Sumter County. (Tr. p. 729-730);
>
> 2. Trial counsel erred when he failed to argue in his directed verdict motion that the state had failed to place him at the scene of the crime or show any evidence of his participation in the murder of the victim. (Tr. p. 820-831);
>
> 3. Trial counsel erred when he waived the *Neil v. Biggers* hearing and allowed in testimony concerning the identification of [Petitioner] by the states witness, Darrell

Koenig. Additionally, trial counsel failed to object to the line-up introduced through Mr. Koenig and Mr. Koenig's in court identification of [Petitioner]. (Tr. p. 583-585; Koenig Testimony p. 621-661);

4. Trial counsel failed to investigate Easy Auto to see if they in fact used yellow temporary tags on their vehicles and if other cars, similar to the blue Volvo, had been sold near the time of the murder. Additionally, trial counsel failed to object to hearsay testimony by an employee of Easy Auto during trial. (Tr. p. 522-524; p. 628, l. 12-18; p. 680-681);

5. Trial counsel failed to object to the prosecutor referring to [Petitioner] as a liar in her closing argument while arguing that her witnesses were credible (Tr. p. 1009; l. 3-5; p. 1016, l. 23-25; p. 1017, 1. 1-6; p. 1024, 1. 3-18; p. 1025, 1. 19-24);

6. Failure to call expert witnesses to challenge the testimony of prosecution witnesses. Furthermore, trial counsel informed [Petitioner] that experts would be at the trial to introduce phone records and give an expert opinion as to the location of the phone Additionally witnesses that were familiar with the condition of the car at the time of the recovery were not called to testify as to the condition of the car.

> a. Arson Expert: An arson expert could have testified that a burning car would have produced an immense amount of smoke and would have been easily visible for a long distance during the day. Furthermore, the expert could have testified that the car would have still retained some heat at the time it was discovered if it had in fact been burned after 10:30 am on the day the car was discovered. [Petitioner's] position is that it is impossible for the car to have been burned after l0:30 am on Sunday morning (when he was allegedly seen by Mr. Koenig driving the car), Therefore, Mr. Koenig's identification of [Petitioner] was in error and, in fact, impossible.
>
> b. Telecommunications Expert: This expert could have testified that [Petitioner's] phone was in use during the time frame when Darrell Koenig allegedly saw [Petitioner] driving the victim's car. The phone records would indicate that [Petitioner's] phone was miles away from the location that Mr. Koenig allegedly saw [Petitioner] driving the victim's car and during the time frame in which the car was allegedly burned by [Petitioner]. Furthermore, the phone records would have corroborated [Petitioner's] alibi witnesses.
>
> c. Eyewitness Identification Expert: This expert could have testified to the inherent unreliability of eyewitness identifications.

7. Trial counsel failed to properly investigate [Petitioner's] alibi witnesses. Although trial counsel did call Calvin Davis as an alibi witness (Tr. p. 864-884) he failed to call Glenn Moses (and others) who were also present and would have corroborated Mr. Davis' testimony;

8. Trial counsel failed to move for a mistrial when the security belt worn by

> [Petitioner] accidentally discharged and caused [Petitioner] to fall out of his chair. (Tr. p. 201-206);
>
> 9. Trial counsel erred when he called the defendant's brother, Paul Bradley, to testify that the defendant told him that the victim was deceased prior to police finding the body. (Tr. p. 934-935);
>
> 10. Trial counsel failed to object to hearsay testimony entered by Mr. Koenig. Mr. Koenig testified that his neighbors told him that the police were looking for a blue Volvo with temporary tags. (Tr. p. 634-635);
>
> 11. Trial counsel failed to object to the prosecutor asserting that she did not have to prove when or where the victim was murdered. (Tr. p. 93);
>
> 12. Trial counsel erred when he failed to object to two letters introduced by Gloria Portee into evidence. The letters were primarily character evidence and had little to no relevance at trial. (Tr. p. 378-386);
>
> 13. Trial counsel erred in allowing Wayne Johnson to say that he had an altercation with [Petitioner] and armed himself (Tr. p. 560).
>
> 14. Trial counsel failed to object to Bobby Lee Hughes saying that he thought the Defendant might have had something to do with the death. (Tr. p. 570, 580);
>
> 15. Trial counsel failed to object to hearsay of Officer Wesley Gardner and Clarence McMillan when saying Koenig said he was 100% sure of his identification. (Tr. p. 613, 715);
>
> 16. Appellate counsel erred by not appealing the decision by the trial Judge to give a jury charge on accomplice liability (hand of one is the hand of all). Additionally, appellate counsel did not include relevant case law in her brief that would have likely resulted in a reversal of the conviction. (Tr. p. 972-974; p. 979).

ECF No. 39-10.

An evidentiary hearing was held on April 15, 2015, and on July 5, 2016, before the Honorable George C. James, Jr. (the "PCR Court"). ECF No. 39-6 at 188–246; ECF No. 39-7; ECF No. 39-8 at 1–45. Petitioner was present and represented by Counsel Kirkland. *Id.* Assistant Attorneys General Daniel Gourly and Julie Coleman represented the State. *Id.* Both parties submitted proposed orders. ECF No. 39-9 at 18–75.

On September 5, 2017, the PCR Court filed an Order denying and dismissing Petitioner's application. ECF No. 39-9 at 76–121. PCR Counsel filed a motion to alter or amend pursuant to

Rules 52(a) & (b) and 59(e). ECF No. 39-9 at 122–55. Without a return from the State, the PCR Court denied the motion by Order filed on May 16, 2018. ECF No. 39-9 at 156.

Petitioner, through counsel, appealed the PCR court's denial of relief. On March 12, 2019, Appellate Defender Susan B. Hackett of the South Carolina Commission on Indigent Defense filed the Petition for Writ of Certiorari and Appendix, raising the following issues:

> I. Did trial counsel provide ineffective assistance in derogation of the Sixth and Fourteenth Amendments by failing to object to improper and speculative opinion testimony from Bobby Wayne Hughes, the deceased's brother, who claimed that Petitioner either killed the deceased or knew something about the killing?
>
> II. Did trial counsel provide ineffective assistance in derogation of the Sixth and Fourteenth Amendments by calling Petitioner's brother to testify who harmed Petitioner's alibi defense by contradicting a prior alibi witness and by stating Petitioner was aware of the death prior to the police finding the body?
>
> III. Did trial counsel violate Petitioner's Sixth and Fourteenth right to the effective assistance of counsel by failing to present a telecommunications expert to use the cell phone records to support Petitioner's alibi defense?
>
> IV. Did trial counsel violate Petitioner's Sixth and Fourteenth right to the effective assistance of counsel by failing to present an arson expert to establish a timeline for when the car was set afire to enable Petitioner to defeat the testimony of Koenig, the state's only eyewitness?
>
> V. Did trial counsel provide ineffective assistance in derogation of the Sixth and Fourteenth Amendments by failing to object to hearsay from the lead investigator in the case regarding the color of the tag on the car in which the deceased was last seen alive where the color of the tag was crucial to identify the car as the one alleged to have been driven by Petitioner shortly before it was found incinerated?
>
> VI. Did trial counsel provide ineffective assistance in derogation of the Sixth and Fourteenth Amendments by failing to object to hearsay from Koenig about what his neighbors said had been reported on the news regarding the dead body in the pond and the car of interest?
>
> VII. Did trial counsel provide ineffective assistance in derogation of the Sixth and Fourteenth Amendments by failing to object to hearsay from the two officers who were present for the identification procedure involving Koenig where their testimony improper bolstered Koenig's identification?

ECF No. 39-11.

On June 4, 2019, Respondent filed the Return to the Petition. ECF No. 39-12. On June 17, 2019, the matter was transferred to the South Carolina Court of Appeals pursuant to Rule 243(1), SCACR.[1] ECF No. 39-13. By Order dated April 15, 2022, the Court of Appeals granted certiorari review on questions 2, 3 & 4 and ordered that the parties commence with further briefing of the issues as provided by Rule 243(j), SCACR. ECF No. 39-14. Petitioner, through counsel, filed his brief on July 13, 2022, ECF No. 39-15, and the State filed its brief on November 14, 2022, ECF No. 39-16. Petitioner, though counsel, filed the Reply Brief on November 30, 2022. ECF No. 39-17. On December 20, 2023, the Court of Appeals dismissed certiorari as improvidently granted. ECF No. 39-18. The Remittitur was issued on January 8, 2024, and filed with the Sumter County Clerk of Court on January 10, 2024. ECF No. 39-19.

**III. Habeas Action**

On September 10, 2024, Petitioner signed and dated his initial Petition for writ of habeas corpus and provided it to prison officials for mailing. ECF No. 1 at 16; *see Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court). With leave of Court, Petitioner filed the operative Amended Petition on May 1, 2025. ECF No. 15.

## STANDARDS OF REVIEW

**I. Summary Judgment Standard**

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

---

[1] Pursuant to South Carolina Appellate Court Rule 243(l), "The Supreme Court may transfer a case filed under this rule to the Court of Appeals." If transferred, the Court of Appeals shall proceed with the case in the same manner as the Supreme Court would have done, with the exception that a petition for writ of certiorari may be granted by one judge of a three-judge panel. Rule 243(l), SCACR.

P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Id*. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Id.* at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*,

699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

**II. Federal Habeas Review under 28 U.S.C. § 2254**

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, in considering Petitioner's claims, the Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d). *See Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

28 U.S.C. § 2254(d); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (explaining federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding"). A state court's decision is contrary to clearly established federal law if that court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Evans*, 220 F.3d at 312 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision unreasonably applies clearly established federal law if the state court "identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413).

Because "review under § 2254(d)(1) focuses on what a state court knew and did," this Court measures the reasonableness of the state court's decision based on the information in the record before the state court. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)). "Likewise, § 2254(d)(2) provides for a limited review of factual determinations in light of the evidence presented in the State court proceeding[;] [thus,] [t]his backward-looking language similarly requires an examination of the state-court decision at the time it was made." *Id.* (citation and internal quotation marks omitted).

Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. Further, factual findings "made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

In his Amended Petition, Petitioner alleges the following grounds for relief:

**Ground One:** Actual Innocence: Petitioner was tried for a crime which he had a valid alibi placing him in a different county than where the Prosecution stated the crime occurred or the alleged eyewitness that stated the Petitioner was seen; Prosecution vindictively sought a conviction against the Petitioner knowing that the Petitioner was no where near the scene of the crime during any of the time frames alleged by any witness produced by the Prosecution; and Petitioner had no part in the alleged crime.

**Ground Two:** Denial of Effective Assistance of Counsel

(1) Trial Counsel was ineffective for failing to investigate this case by failing to interview potential witnesses.

(2) Trial Counsel erred when he failed to move to quash the arrest warrant on the basis that the information in the warrant was demonstrably false and therefore the magistrate issued the warrant based on false information. The warrant claimed that [Petitioner] committed the murder in Sumter County and an eyewitness placed [Petitioner] at the scene of the crime. However, at trial Investigator McMillan admitted that he had no evidence that the victim was killed in Sumter County.

(3) Trial Counsel erred when he failed to argue in his directed verdict motion that the state had failed to place him at the scene of the crime or show any evidence of his participation in the murder of the victim.

(4) Trial Counsel erred when he waived the ***Neil v. Biggers*** hearing and allowed in testimony concerning the identification of [Petitioner] by the state's witness, Darrell Koenig. Additionally, trial counsel failed to object to the line-up introduced through Mr. Koenig and Mr. Koenig's in court identification of [Petitioner].

(5) Trial Counsel failed to investigate Easy Auto to see if they in fact used yellow temporary tags on their vehicles and if other cars, similar to the blue Volvo, had been sold near the time of the murder. Additionally, trial counsel failed to object to hearsay testimony by an employee of Easy Auto during trial.

(6) Trial Counsel failed to object to the prosecutor referring to [Petitioner] as a liar in her closing argument while arguing that her witnesses were credible.

(7) Trial Counsel failed to call expert witnesses to challenge the testimony of prosecution witnesses. Furthermore, trial counsel informed [Petitioner] that experts would be at the trial to introduce phone records and give an expert opinion as to the location of the phone. Additionally, witnesses that were familiar with condition of the car at the time of the recovery were not called to testify as to the condition of the car. Specifically,

> (a) an Arson Expert could have testified that a burning car would have produced an immense amount of smoke and would have been easily visible for a long distance during the day. Furthermore, the Arson Expert could have testified that the car would have still retained some heat at the time it was discovered if it had in fact been burned after 10:30am on the day the car was discovered. [Petitioner's] position is that it is impossible for the car to have been

burned after 10:30am on Sunday morning (when he was allegedly seen by Mr. Koenig driving the car 30 miles away). Therefore, Mr. Koenig's identification of [Petitioner] was in error and, in fact, impossible;

(b) a Telecommunications Expert could have testified that [Petitioner's] phone was in use during time frame when Darrell Koenig allegedly saw Mr. Bradley driving the victim's car. The phone records would indicate that [Petitioner's] phone was miles away from the location that Mr. Koenig allegedly saw [Petitioner] driving the victim's car and during the time fame in which the car was allegedly burned by [Petitioner]. Furthermore, the phone records would have corroborated [Petitioner's] alibi witnesses; and

(c) an Eyewitness Identification Expert could have testified to the inherent unreliability of eyewitness identifications.

(8) Trial Counsel failed to properly investigate [Petitioner's] alibi witnesses. Although trial counsel did call Calvin Davis as an alibi witness (Tr. p. 864-884) he failed to call Glenn Moses (and others) who were also present and would have corroborated Mr. Davis' testimony. (ISSUE ABANDONED).

(9) Trial Counsel failed to move for a mistrial when the security belt worn by [Petitioner] accidentally discharged and caused [Petitioner] to fall out of his chair in the presence of the jury.

(10) Trial Counsel erred when he called the defendant's brother, Paul Bradley, to testify that the defendant told him that the victim was deceased prior to police finding the body.

(11) Trial Counsel failed to object to hearsay testimony entered by Mr. Koenig. Mr. Koenig testified that his neighbors told him that the police were looking for a blue Volvo with temporary tags.

(12) Trial Counsel failed to object to the prosecutor asserting that she did not have to prove when or where the victim was murdered.

(13) Trial Counsel erred when he failed to object to two letters introduced by Gloria Portee in to evidence. The letters were primarily character evidence and had little to no relevance at trial.

(14) Trial Counsel erred in allowing Wayne Johnson to say that he had an altercation with [Petitioner] and armed himself.

(15) Trial Counsel failed to object to Bobby Lee Hughes saying that he thought the defendant might have had something to do with the death.

(16) Trial Counsel failed to object to hearsay of Officer Wesley Gardner

and Clarence McMillan when saying Koenig said he was 100% sure of his identification.

**Ground Three:** Denial of Effective Assistance of Appellate Counsel: Appellate Counsel erred by not appealing the decision of the trial judge to give a jury charge on accomplice liability (hand of one is the hand of all). Additionally, appellate counsel did not include relevant case law in his brief that would have likely resulted in a reversal of the conviction.

ECF No. 15 at 5–10 (citations omitted). Petitioner asks this Court for a new trial. *Id.* at 12.

In the Return and Memorandum of Law in support of Respondent's Motion, Respondent argues that although Petitioner exhausted his available state remedies, nearly all of Petitioner's claims are procedurally defaulted, and "Petitioner has not met the standard which would allow him to bypass the procedural default." ECF No. 39 at 16, 18–20. Respondent further argues that the preserved claims fail on the merits. *Id.* at 19–27.

## I. PROCEDURAL BAR

A federal court considering a § 2254 petition "generally may consider a state prisoner's federal claim *only if* he has *first* presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (emphasis added). That is, before seeking habeas relief in federal court, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). Thus, when presented with an application for habeas relief, the federal court's first inquiry is determining whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). If a prisoner has *properly* raised his claims before the state court in accordance with state procedures, he has met the exhaustion requirement, and a federal court may hear those claims.[2]

[2] In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code

However, when a state prisoner has failed to properly raise his federal claims in accordance with state procedural rules, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted."[3] *Shinn*, 596 U.S. at 371. Under the doctrine of procedural default—also known as procedural bar—federal courts generally decline to consider those claims not presented to the state court in accordance with the state's procedural rules. *See id.* at 378; *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021). This is because allowing a state prisoner to simply bypass a state's procedural requirements on their way to federal court would render the exhaustion requirement meaningless. *See Shinn*, 596 U.S. at 377–79. As the Supreme Court recently explained, exhaustion and procedural default promote our dual system of federal and state judicial comity: "Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm

Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will generally result in the application of a procedural bar by the South Carolina Supreme Court. *See Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009) (discussing procedural bar and noting the "general rule" in South Carolina is that where a party fails to file a Rule 59(e) motion, the argument is forfeited). Furthermore, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. In South Carolina, a claim is not procedurally barred from review in this Court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals. *See In re Exhaustion of State Remedies in Crim. & Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454 (S.C. 1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").

[3] In these instances where a state court would dismiss such claims for their procedural failures, those claims are "technically exhausted" in the habeas context, because state court remedies are "'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006); *see also Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette,* 644 F.3d 192 (4th Cir. 2011); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

to the States that results from the failure of federal courts to respect state procedural rules." *Id.* at 378–79 (internal citations and quotation marks omitted). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear.[4] *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).

Notwithstanding the foregoing, "a federal court is not required to automatically deny unexhausted or procedurally defaulted claims." *Shinn*, 596 U.S. at 379. Federal courts may consider procedurally defaulted claims in limited circumstances in which a petitioner shows (1) sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by (2) "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice," *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008). *See also Richardson v. Kornegay*, 3 F.4th 687, 700 (4th Cir. 2021) ("We excuse a procedural default in two circumstances: (1) when the petitioner establishes 'cause and prejudice' for the default; or (2) when the default would result in a 'fundamental miscarriage of justice.'" (citation omitted)); *Farabee v. Clarke*, 967 F.3d 380, 395 (4th Cir. 2020).

"To establish cause, the petitioner must show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court at the appropriate time, or that the factual or legal basis for the claim was not reasonably available at the time of the state proceeding." *Mahdi*, 20 F.4th at 893 (internal citations and quotation marks omitted). To establish prejudice, the petitioner "must show not merely a substantial federal claim, such that the errors at

[4] The South Carolina Supreme Court will refuse to consider claims raised in an appeal that could have been raised at an earlier time. *See, e.g.*, *Evans v. State*, 611 S.E.2d 510, 515 (S.C. 2005) (noting an "issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review" (citation omitted)). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.

[] trial created a *possibility* of prejudice, but rather that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn*, 596 U.S. at 379–80 (emphasis in original) (citation and internal quotation marks omitted).

Because this Court's role is "limited to reviewing state-court judgments, federal review is inappropriate if a prisoner failed to raise his claim and have it reviewed by a state court." *Kornahrens v. Evatt*, 66 F.3d 1350, 1362 (4th Cir. 1995) (explaining that the purpose of federal habeas review "is to provide criminal defendants with a mechanism to review state court interpretations of federal constitutional protections, while providing deference to the state-court proceedings"). Thus, despite this Court's liberal construction of pro se filings, if the Grounds Petitioner raises do not appear to have been considered by the state court, those Grounds will be considered procedurally barred.

Respondent argues that Grounds Two (1), (2), (3), (4), (5), (6), (7(c)), (8), (9), (12), (13), (14),[5] and Ground Three are procedurally defaulted because, although "Petitioner appealed the denial of relief from his PCR action, . . . these issues were not raised in the petition." ECF No. 39 at 19.

In his Response to the Motion for Summary Judgment, Petitioner concedes that these grounds are procedurally defaulted, but he suggests that the default should be excused because his PCR appellate counsel was "incompetent":

> Petitioner appealed the denial of relief from his PCR action, however, these issues were not raised in the Petition for Writ of Certiorari, and are therefore defaulted. . . . Petitioner asserts that Petitioner submitted a Rule 59(e) Motion to Alter or Amend preserving Grounds Two and Three for appellate review, however, appellate counsel failed to raise each claim that was preserved waiving the Petitioner's federal review, thus making counsel incompetent. Therefore, the

[5] Respondent uses letters (a) through (p) to refer to the subparts of Ground Two. *See* ECF No. 39 at 19 (referring to "Grounds Two (a), (b), (c), (d), (e), (f), (g(iii)), (h), (i), (l), (m), (n)"). However, because the Amended Petition uses numbers (1) through (16) to refer to Ground Two's subparts, *see* ECF No. 15 at 7–9, the undersigned likewise uses numbers 1 through 16.

> Petitioner can show that Grounds Two and Three are genuine issues of material fact that entitles him to habeas review. . . .

ECF No. 54 at 12–13.

Upon review, the undersigned finds that Grounds Two (1), (2), (3), (4), (5), (6), (7(c)), (8), (9), (12), (13), (14), and Ground Three were not fully adjudicated on the merits in state court. Although each of these grounds appears to have been raised to and ruled on by the PCR Court, *see* ECF No. 39-10; ECF No. 39-9 at 76–121, Petitioner did not raise these issues in the petition for a writ of certiorari. ECF No. 39-11. Therefore, these Grounds are procedurally barred from federal habeas review. *See Mahdi*, 20 F.4th at 893 (noting "a claim is procedurally barred if the petitioner fails to raise it in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision" (cleaned up) (citation omitted)); *Longworth v. Ozmint*, 377 F.3d 437, 447–48 (4th Cir. 2004) (finding a petitioner's claim in his federal habeas petition was procedurally defaulted when he raised the claim in PCR but did not present it in his petition for certiorari filed with the Supreme Court of South Carolina); *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) ("[F]ailure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims.").

Moreover, Petitioner has not shown sufficient cause and actual prejudice or a fundamental miscarriage of justice that would otherwise allow this Court to consider this issue. *See Coleman*, 501 U.S. at 750 ("[F]ederal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). To the extent Petitioner is attempting to claim ineffective assistance of PCR *Appellate* Counsel regarding these defaulted grounds to show "cause" and excuse the default under *Martinez*

*v. Ryan*, 566 U.S. 1 (2012), the undersigned notes *Martinez* is inapplicable.[6] The Supreme Court created the narrow *Martinez* exception to be applicable only to allegations of ineffective assistance of PCR Counsel—it "does *not* apply to claims of [ineffective assistance of counsel] by PCR appellate counsel." *Mahdi*, 20 F.4th at 893 (emphasis in original).

Because the claims raised in Grounds Two (1), (2), (3), (4), (5), (6), (7(c)), (8), (9), (12), (13), (14), and Ground Three were not fully adjudicated on the merits in state court and Petitioner has not demonstrated a basis to excuse the default of these claims, they are procedurally barred from federal habeas review. Accordingly, the undersigned recommends that Respondent's Motion be granted as to Grounds Two (1), (2), (3), (4), (5), (6), (7(c)), (8), (9), (12), (13), (14), and Ground Three of the Amended Petition. *See* 28 U.S.C. § 2254(b).

## II. PRESERVED PORTIONS OF GROUND TWO – INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

As stated above, portions of Ground Two raise ineffective assistance of counsel claims that are procedurally barred. Respondent argues that the preserved portions of Ground Two of the Amended Petition—Grounds Two (7(a)), (7(b)), (10), (11), (15) and (16)—do not present arguments that would support relief under § 2254. ECF No. 39 at 20–27. The undersigned agrees.

### A. The *Strickland* Standard

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the U.S. Supreme Court

---

[6] Generally, PCR Counsel's errors do not qualify as cause to excuse a procedural default. *See Owens v. Stirling*, 967 F.3d 396, 422 (4th Cir. 2020). However, "when state law requires 'claims of ineffective assistance of trial counsel [to] be raised in an initial-review collateral proceeding' and not on direct review—which South Carolina law does—procedural default does not bar federal habeas review of 'a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Sigmon v. Stirling*, 956 F.3d 183, 198 (4th Cir. 2020) (quoting *Martinez*, 566 U.S. at 17), *as amended* (Apr. 15, 2020).

set forth a two-part test for courts to use to determine claims of ineffective assistance of counsel. A meritorious ineffective assistance of counsel claim must show two elements: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687–96.

As to the first prong, a court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008). To establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable

> applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal citations omitted). Thus, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

The Supreme Court has explained that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Thus, the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Valentino*, 972 F.3d at 580 (citation and quotation marks omitted). Accordingly, "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (citation and internal quotation marks omitted). Finally, "if a fairminded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'" *Shinn v. Kayer*, 592 U.S. 111, 120 (2020) (quoting *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012)).

**B. The PCR Hearing and Order of Dismissal**

The PCR evidentiary hearing was conducted over two days on April 15, 2015, and July 15, 2016. In its Order of Dismissal, the PCR Court[7] provided the following factual background:

---

[7] Because the South Carolina Court of Appeals ultimately denied or dismissed Petitioner's full Petition for Writ of Certiorari, the PCR Court was the last state court to adjudicate the merits of the issues raised in the Petition for Writ of Certiorari. *See* ECF Nos. 39-11, 39-14, 39-18; *see also*

> On Monday, May 23, 2005, the victim was found dead floating in Boyle's Pond in Sumter County. He had been shot dead. A coat hanger was wrapped around his ankle and around a cement block in an unsuccessful effort to keep him submerged. He was last seen by his girlfriend, Martha Ransom, driving out of her driveway in Rembert the immediately preceding Saturday, May 21, at around 5:30 p.m. The Applicant was seen driving his own vehicle, a Chevrolet Beretta, with an unknown black male passenger. According to Ransom, the victim was outside talking with the Applicant and came inside the house in an unsettled state, got the keys to her blue Volvo, went outside, and drove it off, with the Applicant and the unknown man following behind in the Applicant's vehicle. The Applicant gave a statement to law enforcement that when he and the unknown man drove off in front of the victim, they stopped at the end of the driveway, and the unknown man exited his vehicle and got in the Volvo with the victim. The Applicant stated he never saw the victim again.
>
> Trial witness Darrell Koenig testified he owned a vacant six-acre residential lot on Cobblestone Road in Sumter County. Cobblestone Road is across Sumter County from Martha Ransom's residence in Rembert. Koenig testified he went to his lot early Sunday morning, May 22, to run a backhoe to remove some trees and do other work. He recalled it being a Sunday because he skipped church to go to his lot. He testified that at approximately 9:30 a.m., he saw the Applicant slowly driving a blue Volvo with a bright yellow paper tag with red letters on Cobblestone Road. The victim's body was found the next day—Monday, May 23—in Boyle's Pond, less than a mile from Cobblestone Road.
>
> The blue Volvo was found in Lee County by local resident pedestrians on Sunday, May 22, between 2:30 and 3:30 p.m., the same day Mr. Koenig testified he saw the Applicant driving the vehicle. The Volvo had been totally burned. The Lee County pedestrians testified they had walked in this area the afternoon before, but the vehicle was not there. The location at which the vehicle was found is 20–30 miles away from Cobblestone Road and Boyle's Pond.

ECF No. 39-9 at 79–80.

The PCR Court explained that it had "reviewed the record in its entirety," had "considered the testimony and other evidence presented at the [PCR] hearing," and "had the opportunity to observe the witnesses presented at the hearing, pass upon their credibility, and weigh their

---

*Shinn*, 592 U.S. at 120 n.1 ("Section 2254 calls for review of the last state-court adjudication on the merits."); *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (explaining that when the last opinion does not reflect the reasoning of the state court, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning").

testimony accordingly." *Id.* at 80. Ultimately, the PCR Court concluded that "trial counsel zealously and ably represented Applicant," notwithstanding some deficiencies:

> Trial counsel's performance was deficient in some respects, as noted herein. However, it is a practical impossibility for any trial lawyer to perfectly address every issue that arises during a complex trial. Trial counsel's deficiencies in this case did not result in prejudice to the Applicant. The Applicant has not established 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668. . . . Based upon the foregoing, the Court concludes the Applicant has not established constitutional violations or deprivations that require this court to grant his application. Therefore, this application for post-conviction relief must be denied.

ECF No. 39-9 at 121. The PCR Court addressed in detail each of the claims at issue in the Amended Petition's preserved grounds, as set forth below.

**1. Grounds Two (7)(a) and (b) – Trial Counsel Failed to Present an Arson Expert and a Telecommunications Expert**

In Ground Two 7(a) of the Amended Petition, Petitioner alleges that trial counsel was ineffective for failing to call an arson expert at trial. ECF No. 15 at 8. In Ground Two 7(b), Petitioner alleges that trial counsel was ineffective for failing to call a telecommunications expert at trial. *Id.*

**a. PCR Court's Decision**

The PCR Court addressed these two issues together. ECF No. 39-9 at 96–104. First, the PCR Court summarized the relevant evidence from the PCR hearing and the trial:

> The Applicant claims he is entitled to relief because trial counsel did not call any expert witnesses during the Applicant's trial. The Applicant claims trial counsel should have retained and called . . . a cell phone tower expert[] and an arson expert. Trial counsel testified he did not consider retaining any experts in the Applicant's case.
>
> The Applicant testified trial counsel told him he would be able to cross-examine the state's cell tower expert—Investigator McMillan—as to the cell tower locations off which the Applicant's phone pinged at various times during the weekend of the murder. Trial counsel testified at the PCR hearing that he believed "the cell phone records were probably the strongest factor that we had in proving that Mr. Bradley

was innocent. Trial counsel cross-examined Investigator McMillan concerning the location of the Applicant's phone throughout the weekend. Trial counsel testified McMillan was not particularly prepared and had not reviewed the records carefully, but trial counsel was able to establish the locations of the Applicant's phone relative to the cell towers during cross-examination. Trial counsel's cross-examination of McMillan established the Applicant's cell phone was used to make eighteen calls on Sunday, May 22, 2005, between 7:16 a.m. until 10:32 am. McMillan acknowledged at trial that all eighteen of these calls pinged off towers in the Bishopville (Lee County), Wisacky Road (Lee County), and Camden (Kershaw County) areas. McMillan confirmed none of these towers was close to where the Applicant was allegedly seen by Mr. Koenig driving the Volvo at 9:30 that morning. McMillan acknowledged during cross-examination that if the Applicant had been using his phone in the Bishopville, Wisacky, and Camden areas from 9:00 until 11:00 on Sunday morning, Mr. Koenig could not have seen him driving the blue Volvo on Cobblestone Road within one-half mile of where the victim's body was found.

The Applicant called Ben Levitan to testify at the PCR hearing. Levitan was qualified as an expert in historical cell phone analysis. Levitan used the cell phone data provided to trial counsel by the solicitor and compared the testimony of the trial witnesses to the locations, of the mobile phone from the point the victim was last seen to the moments the body and the burned-out car were located. He noted the phone appeared to be in locations consistent with the defendant's alibi witnesses and other trial testimony. Levitan's testimony confirmed Investigator McMillan's testimony as to the locations of the phone at the times the calls were made Sunday morning between 7:16 and 10:32.

Levitan testified the Applicant's phone was likely at the victim's address the last time the victim was seen. This confirmed Martha Ransom's trial testimony and places the phone with the Applicant the day before the victim's body was found. Levitan testified the Applicant's phone was at the locations testified to by alibi witnesses Tenisha Williams and Eloise Sinkler. This tends to confirm the Applicant's PCR testimony and places the phone in his hands. Levitan testified the phone also appeared to be at the locations of alibi witnesses Calvin Davis and Donna McDuffie. This again places the phone in the Applicant's hands. Levitan also testified the Applicant's phone was approximately 23 miles from where eyewitness Koenig claimed to have seen the Applicant driving the blue Volvo the morning the burned vehicle was discovered and he was near Donna McDuffie's house. Levitan testified the phone's location was consistent with Rick Nelson's testimony that he spoke with the Applicant between 3:00 and 5:00 pm on Sunday (again placing the phone in the Applicant's hands). Levitan stated the phone location was also consistent with the testimony of Loubertha Bradley that the Applicant was at her house at a cookout on Sunday, again placing the phone in the Applicant's hands. Levitan further testified the Applicant's phone was in the area of alibi witness Tina Leon between the hours of 10:00 am and 4:00 pm on Sunday, again placing the phone in the Applicant's hands. Levitan testified the Applicant's phone was 23 miles from Cobblestone Road at the time Mr. Koenig claims to have

seen the Applicant.

The foregoing testimony was also elicited by trial counsel from Investigator McMillan on cross-examination at trial, as noted above. Trial counsel cross-examined Investigator McMillan as to the timeline leading up to the point when the Volvo was discovered burned in Lee County. Through McMillan, trial counsel established Koenig claimed to have seen the vehicle between 9:00 a.m. and 11:00 a.m.

During trial, trial counsel cross-examined Investigator McMillan about the amount of heat coming from the car and how long it would take for a car to cool off after being completely burned out. McMillan was not able to effectively answer these questions.

During the PCR hearing, the Applicant called Daniel Olson, an expert qualified in the origin and cause of automobile and machinery fires. He testified there was a clear timeline according to trial testimony that the car was seen intact between 9:30 am and 10:15 am and that the car was found burned at around 2:30 p.m. (or later) the same day. Olson further testified the burned car was 26.66 miles away from Cobblestone Road, approximately a 47 minute drive. According to Mr. Olson, the earliest the car could have been set on fire would have been 10:17 am.

Olson testified the Volvo was completely burned out. Mr. Olson testified this type of car fire produces tremendous flame and smoke. He testified the car would have burned for approximately 45 minutes and the earliest the fire could have ignited was 10:17 a.m. He believed the fire would have been burning at 1800 degrees or more based on the fact that aluminum parts appeared to be melted. He testified the tires could smolder "for a very long time". He opined that if the car finished burning at around 11:30 a.m. or so, it would have still been hot at the time it was discovered. He testified parts of the car, particularly the tires, would have still been smoking at the time of discovery. He further testified there was absolutely no arson or burn investigation performed on the vehicle and it left many questions unanswered that would have helped a jury. He opined the car that was seen at 9:30 a.m. on Cobblestone Road was not the car found at 2:30 or 3:00 burned in the cemetery many miles away.

Mr. Olson considered the trial testimony of Matt Bramlett. Mr. Bramlett lived directly across the street from the cemetery in which the burned car was found. Mr. Bramlett testified at trial that between midnight and 1:30 a.m. on Sunday, May 21, he heard his dog barking for approximately 25 minutes. This, according to Mr. Olson, would have been much more consistent with when the car would have been burned considering the condition in which it was found. Trial counsel elicited similar testimony from Investigator McMillan during trial. Also, Bramlett's trial testimony aided the Applicant by establishing the scenario in which the Volvo was left in Lee County and burned during the early morning hours of Sunday, thereby making it impossible for Koenig to have seen it in his neighborhood between 9:00 and 11:00 a.m.

> Derrick Slater, the tow truck driver who removed the car from the scene, was called by the Applicant to testify at the PCR hearing. He testified he arrived at the burn scene around 5:30 or 6:00 p.m. the day the Volvo was found burned, and he testified he did not notice any heat whatsoever emanating from the vehicle. Slater arrived at least two hours after the vehicle was found, so his testimony as to whether the vehicle was hot and/or smoldering is of less significance than the testimony of Mr. Bramlett, Mr. McCutchen, and Mrs. McCutchen, who were all present when the vehicle was found. None of the latter three witnesses noticed any smoldering or heat emanating from the vehicle.

ECF No. 39-9 at 96–101 (internal citations and footnote omitted).

The PCR Court then explained its findings of fact and conclusions of law related to the telecommunications expert and arson expert:

> The Applicant claims he is entitled to relief because trial counsel did not employ an expert such as Mr. Levitan to establish that certain calls made by the Applicant pinged off cell towers in locations that confirmed his whereabouts at certain times and that confirmed his cell phone was being used 23 miles away at the time the Applicant was allegedly seen driving the blue Volvo. The Court respectfully disagrees. Trial counsel's cross-examination of Investigator McMillan was thorough and created a substantial question as to whether the Applicant was in the area where Mr. Koenig claims to have seen him driving the Volvo on Sunday morning. Trial counsel thoroughly addressed the cell tower issues in his closing argument, referring not only to the inconsistency between the Applicant's phone being used 24 miles away from where Koenig claims he saw the Applicant, but also to the fact that the cell tower records confirmed the Applicant's phone was being used in areas where the Applicant and other witnesses claimed they saw the Applicant at certain relevant times. As trial counsel argued to the jury in his closing:
>
>> All of the calls were made from the north area of [Sumter] county, from Bishopville or in Camden. How could [the Applicant] be driving around on Cobblestone? He's making phone calls 24 miles away?
>
> As for the origin and cause evidence presented at the PCR hearing by expert Olson, trial counsel testified at the PCR hearing he had not formed a theory of when the car burned but did think it would still be smoking and burning for hours. He offered no reason for failing to call an expert and admitted he did not think it mattered how hot the car got, only that it was found in a particular location. However, he testified that if expert testimony established the car could not have possibly been cool and not smoking at the time it was found, such evidence would have discredited Mr. Koenig's testimony.
>
> Whether trial counsel was deficient in not calling an origin and cause expert such as Mr. Olson, and whether the failure to call such an expert prejudiced the Applicant

> is a closer question. The Applicant maintains the issue of when the car was burned was of paramount importance because Mr. Koenig claimed he saw the car being driven at 9:30 a.m., 20-30 miles away from where it was found burned five hours later. The Applicant claims the car could not have been driven at 9:30, burned at 10:17, and be cool to the touch and not smoldering at 2:30 p.m.; he therefore claims it would have been impossible for Mr. Koenig to have seen the car at 9:30.
>
> While the Court agrees that Koenig's testimony may have been discredited in the jury's eyes by Olson's testimony, that does not necessarily lead to the conclusion the outcome of the trial would likely have been different if the testimony had been presented to the jury. One aspect of Olson's testimony emphasized by the Applicant is that Olson's testimony, if believed, would make it more likely than not the vehicle was set on fire in Lee County some hours before it was allegedly seen by Koenig at 9:30. Removing Koenig's account from of [sic] the evidentiary equation would leave remaining Olson's expert testimony that the fire was set in the early morning hours of Sunday. As referenced above, the cell tower testimony from both McMillan and Levitan tended to establish two things. First, the Applicant had his cell phone with him during the day on Saturday (the day the victim was last seen) and during Saturday night. Second, the Applicant's phone was used to participate in 18 calls between 7:16 a.m. until 10:32 a.m. in Lee County and Kershaw County. Employing the testimony of Olson to establish the fire was set much earlier than 10:17 a.m. would have perhaps incriminated the Applicant even more, because if the Volvo was burned in Lee County hours before 10:17, the Applicant was in *Lee County* using his phone as early as 7:16 a.m. As Investigator McMillan (at trial) and Levitan (at the PCR hearing) testified, all eighteen of the calls to or from the Applicant's phone pinged off towers in the Bishopville (Lee County), Wisacky Road (Lee County), and Camden (Kershaw County) areas. While Levitan confirmed these cell towers were 20-30 miles from where the Applicant was allegedly seen by Mr. Koenig driving the Volvo at approximately 9:30 that morning, McMillan's and Levitan's testimony tended to place the Applicant in Lee County several hours before 10:17 a.m., within the time frame Olson opines the fire was set. Calling expert witnesses such as Olson and Levitan "sounds good on paper", but their testimony casts the Applicant in an incriminating light as well. The Court concludes the Applicant has not met his burden that trial counsel was deficient in not calling these two experts, but even [if] he were deficient, the Applicant has not proven the outcome of the trial would likely have been different had the witnesses testified at trial.

ECF No. 39-9 at 102–04 (internal citations omitted).

**b. Merits Analysis**

Petitioner generally argues, in support of all of his claims, that he believes his trial counsel violated the American Bar Association's guidelines for representation, and he contends that a petitioner should not have to bear the burden of showing prejudice because "proof of prejudice

may well be absent from the record precisely because counsel had been ineffective." ECF No. 54 at 19–20. These arguments do not support habeas relief. The Supreme Court has made clear that "'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition," *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (quoting *Strickland*, 466 U.S. at 688); *see Strickland*, 466 U.S. at 688–89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."). Moreover, federal law clearly requires that a petitioner must establish prejudice before he can be granted habeas relief on a claim of ineffective assistance of counsel. *See Shinn v. Kayer*, 592 U.S. 111, 117–18 (2020) ("Under *Strickland*, [the petitioner] must show that his counsel provided deficient performance that prejudiced the defense."); *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Petitioner also argues that the state court's disposition of the expert witness issues "was unreasonable." ECF No. 54 at 16–17. The undersigned disagrees.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner's trial counsel was not ineffective for failing to call an arson expert or a telecommunications expert is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. As an initial matter, the record fails to demonstrate that the PCR Court confronted a set of facts that were

materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent, and found that Petitioner had not shown either "that trial counsel was deficient in not calling these two experts" (prong one), or that "the outcome of the trial would likely have been different had the witnesses testified at trial" (prong two). ECF No. 39-9 at 104. Petitioner has not shown that these determinations were unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Grounds Two 7(1) and 7(b) are without merit, such that summary judgment in favor of Respondent is warranted.

### 2. Ground Two (10) – Trial Counsel Erred When He Called Petitioner's Brother

In Ground Two (10) of the Amended Petition, Petitioner alleges that trial counsel erred when he called Petitioner's brother, Paul Bradley, to testify that Petitioner told him that the victim was deceased prior to police finding the body. ECF No. 15 at 8.

#### a. PCR Court's Decision

The PCR Court summarized the relevant evidence from the PCR hearing and the trial related to this issue:

> Sheriff's Captain James Turner testified at trial that he commanded the Criminal Investigations Division. On Monday, May 23, 2005, he received a call that a body had been found in Boyle's Pond. He recalled receiving the call around 1:30 pm to 2:00 p.m. Trial counsel called Tina Leon to testify at trial. Ms. Leon stated that on May 23, 2005, the Applicant was at her house painting from 10:00 am until 4:00 pm. She stated the Applicant did not leave the house during that time and that she picked up lunch from Sonic for the Applicant and another man assisting him. Subsequent to calling Ms. Leon, trial counsel called the Applicant's older brother, Paul Bradley. Mr. Bradley testified he saw the Applicant in his blue Beretta with Tanisha the Saturday night of her prom, and confirmed the Applicant came to his house to borrow $20 to buy a camera. He testified he saw the Applicant on Monday the 23rd "around 1:00" and the Applicant was crying and said his friend had been killed.

ECF No. 39-9 at 106–07 (internal citations omitted).

The PCR Court then found that trial counsel was not ineffective as to this issue:

> The Applicant claims trial counsel was deficient in calling Paul Bradley, as he directly contradicted the testimony of alibi witness Tina Leon, who testified the Applicant was at her house and did not leave between 1:00 and 4:00 p.m. on Monday May 23. The Applicant also claims Mr. Bradley's testimony suggested the Applicant was aware the victim was deceased before the body had been recovered and identified by law enforcement. The Applicant points to the solicitor's closing argument, wherein she referenced Mr. Bradley's testimony concerning the 1:00 time frame and stated Mr. Bradley "provided one of the most important pieces of evidence in this case . . ."
>
> The Applicant claims this testimony was extremely damaging to the defense and was elicited by trial counsel after he had already established through other witnesses the Applicant's location on the day the body was recovered. The Applicant claims trial counsel did not thoroughly investigate Paul Bradley and therefore did not realize his testimony would be one of the major pieces of evidence the prosecution would rely on in its closing argument. Trial counsel testified at the PCR hearing he would not have called Paul Bradley to testify had Mr. Bradley told him the Applicant told him, before law enforcement identified the body, his friend had been killed. The Applicant maintains this is proof trial counsel's performance was deficient and that Paul Bradley's testimony was particularly damaging to the Applicant's defense and the outcome of the trial would likely have been different had he not been called as a witness. The Court disagrees. The trial transcript clearly reflects Mr. Bradley testified at trial he saw the Applicant "around 1:00". The Applicant ignores the reality that time-of-day estimates are just that—estimates. Trial counsel explained he called Paul Bradley to testify primarily because he was the leader of the Applicant's family and would tend to cast the Applicant in a good light. The Court concludes trial counsel's performance relative to the calling of Mr. Bradley's testimony was not deficient. Even if it were deficient, the content of Mr. Bradley's testimony did not likely play an important part in the jury finding the Applicant guilty, and absent his testimony, it is not likely the outcome of the trial would have been different.

ECF No. 39-9 at 107–08 (internal citations omitted).

**b. Merits Analysis**

Petitioner argues generally that the state court's "disposition of the issue was unreasonable." ECF No. 54 at 17. The undersigned disagrees.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner's trial counsel was not ineffective for calling Plaintiff's brother

is neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. First, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Applying prong one, the PCR Court found that trial counsel was not deficient in calling Plaintiff's brother to testify. ECF No. 39-9 at 108. Applying prong two, the PCR Court found no prejudice, explaining that "the content of Mr. Bradley's testimony did not likely play an important part in the jury finding the Applicant guilty, and absent his testimony, it is not likely the outcome of the trial would have been different." *Id.* Petitioner has not shown that these determinations were unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Two (10) is without merit, such that summary judgment in favor of Respondent is warranted.

**3. Ground Two (11) – Trial Counsel Failed to Object to Hearsay from Koenig**

In Ground Two (11) of the Amended Petition, Petitioner alleges that trial counsel erred when he failed to object to hearsay testimony when Mr. Koenig testified that his neighbors told him that the police were looking for a blue Volvo with temporary tags. ECF No. 15 at 8.

**a. PCR Court's Decision**

The PCR Court addressed this claim in its Order of Dismissal as follows:

> Darrell Koenig testified that the day after he saw the blue Volvo, he spoke to his neighbors and was told by them "that on the news that they were looking for a blue 1990 Volvo with a temporary tag on it." He testified he immediately knew that was the car he saw the previous day. . . .
>
> Rule 802, SCRE, provides hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute. Hearsay is defined in Rule 80l(c) as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rules 803 and 804 list various exceptions to Rule 802.

> It is clear the statement by the neighbors was hearsay and trial counsel did not object to the introduction of that evidence. Mr. Koenig's credibility could well have been bolstered by this inadmissible evidence. This Court finds trial counsel was deficient in failing to object to the testimony of Mr. Koenig. However, the Court concludes the Applicant has not established this deficiency resulted in prejudice to the Applicant. Any bolstering of Koenig's credibility through the hearsay statements of his neighbors was minimal at best and cannot reasonably be considered to have made a difference in the outcome of the trial.

ECF No. 39-9 at 108–09 (internal citations omitted).

**b. Merits Analysis**

Petitioner argues generally that the state court's "disposition of the issue was unreasonable." ECF No. 54 at 17. The undersigned disagrees.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner's trial counsel was not ineffective for failing to object to Koenig's hearsay testimony was neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. First, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Applying prong two, the PCR Court found no prejudice, explaining that "[a]ny bolstering of Koenig's credibility through the hearsay statements of his neighbors was minimal at best and cannot reasonably be considered to have made a difference in the outcome of the trial." ECF No. 39-9 at 109. Petitioner has not shown that this determination was unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Two (11) is without merit, such that summary judgment in favor of Respondent is warranted.

**4. Ground Two (15) – Trial Counsel Failed to Object to Hughes' Testimony**

In Ground Two (15) of the Amended Petition, Petitioner alleges that trial counsel erred when he failed to object to Bobby Lee Hughes saying that he thought Petitioner might have had something to do with the death. ECF No. 15 at 9.

**a. PCR Court's Decision**

The PCR Court addressed this claim in its Order of Dismissal as follows:

> Bobby Lee Hughes, the victim's older brother, was also called to testify by the prosecution. During direct examination by the solicitor, Mr. Hughes testified he met the Applicant several years before the murder and that his brother and the Applicant were best of friends and as close as brothers. Hughes testified that after the murder, he saw the Applicant at the home of one of the victim's old girlfriends and that the Applicant asked to talk to him privately. Hughes testified it appeared the Applicant was "playing crying" and not truly upset. Hughes testified the Applicant told him that the Saturday before the victim's body was found, he drove up to the victim's house and saw an unknown man with the victim. Hughes testified the Applicant told him "[the three of them] were supposed to go do a deal", but that the Applicant couldn't go because he had to take his daughter or step-daughter to the hairdresser. Hughes testified the Applicant told him the victim and the unknown man rode off together. Hughes testified he told law enforcement he thought the Applicant was involved in the murder "in some kind of way" and that if the Applicant didn't commit the murder, he knew something about it. The solicitor asked him if he thought the murder "had anything to do with the defendant," and Hughes responded he kind of did and kind of didn't think the Applicant was involved but he did think the Applicant knew more than he told anyone because the Applicant and the victim were so close. On re-direct, the solicitor addressed the issue again by asking Hughes exactly what he said to law enforcement concerning the Applicant's involvement with the murder. Mr. Hughes responded, "I said somewhere or another if he didn't commit the murder himself, he knows something about it and he got something to do with it. If he actually didn't do the killing, he know something about it, he's involved some kind of way." . . .
>
> The Applicant argues the foregoing testimony of . . . Mr. Hughes was inadmissible character evidence and not relevant to the issue of whether the Applicant murdered the victim. The Applicant argues the testimony did not establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity, and served only to impugn the character of the defendant. The Applicant claims trial counsel was deficient in failing to object to this testimony and further deficient for himself asking Mr. Hughes if he thought the Applicant was involved in the crime. The Applicant claims the statements were speculation at best, . . . [and] were highly prejudicial to the Applicant as they portrayed him as a dangerous person in the eyes of those close to him. . . .

> As for Mr. Hughes' testimony, the Court concludes that some of it was certainly objectionable. Trial counsel should have objected to the solicitor's question as to whether Hughes thought the Applicant had anything to do with the murder, because such testimony was irrelevant. Trial counsel should have also objected to Hughes' testimony that he sort of did and sort of did not believe the applicant was involved in the murder, and trial counsel should have objected to Hughes' testimony that if the Applicant did not commit the murder himself, he knew something about the murder and was involved in some way. The Court concludes trial counsel was deficient in not objecting; however, the Court concludes that had counsel objected and the testimony not given, there is not a reasonable probability the outcome of the trial would have been different.

ECF No. 39-9 at 113–16 (internal citations omitted).

**b. Merits Analysis**

Petitioner argues generally that the state court's "disposition of the issue was unreasonable." ECF No. 54 at 18. The undersigned disagrees.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner's trial counsel was not ineffective for failing to object to Hughes' testimony was neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580.

As an initial matter, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Moreover, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent, and found at prong two that there was no prejudice, explaining that "had counsel objected and the testimony not given, there is not a reasonable probability the outcome of the trial would have been different." ECF No. 39-9 at 116. Petitioner has not shown that this determination was unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Two (15) is without merit, such that summary judgment in favor of Respondent is warranted.

**5. Ground Two (16) – Trial Counsel Failed to Object to Officer Gardner and McMillan's Identification**

In Ground Two (16) of the Amended Petition, Petitioner alleges that trial counsel erred when he failed to object to hearsay testimony from Officers Gardner and McMillan that Koenig said he was 100% sure of his identification. ECF No. 15 at 9.

**a. PCR Court's Decision**

The PCR Court addressed this claim in its Order of Dismissal as follows:

> Both Investigator Wesley Gardner and Investigator McMillan were asked by the solicitor how certain Mr. Koenig was of his identification of the Applicant as being the driver of the blue Volvo. Both officers indicated Mr. Koenig stated he was 100 percent certain of his identification of the Applicant. . . .
>
> Again, Rule 802, SCRE provides that hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court or by statute. Hearsay is defined in Rule 801(c) as a statement, other than one made by the declarant while testify[ing] at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rules 803 and 804 list various exceptions to Rule 802.
>
> The Applicant points to SCRE Rule 608(a), which states in relevant part:
>
>> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> Initially, the Applicant argues pursuant to rule 80l(c), the officers' testimony concerning the statement made by Mr. Koenig was hearsay and should have been objected to by trial counsel. The Applicant claims Mr. Gardner improperly bolstered the testimony of Darrell Koenig as Mr. Koenig had not testified at the time he was asked how certain Mr. Koenig was of his identification. Therefore, the Applicant claims, there was no possibility Mr. Koenig's credibility had been attacked as contemplated by SCRE 608.
>
> The Court concludes the testimony from Gardner and McMillan of Mr. Koenig's 100 percent certainty of his identification of the Applicant was indeed hearsay and no exception to the rule against hearsay applied. Trial counsel should have objected. However, the Applicant's contention that this entitles him to a new trial ignores the fact that Mr. Koenig himself testified he was absolutely sure of his identification; he was clearly a confident witness and any bolstering by Gardner and McMillan

> was of no significance. The Court concludes there is no possibility the outcome of the trial would have been different if a proper objection had been made.

ECF No. 39-9 at 117–18 (internal citations omitted).

**b. Merits Analysis**

Petitioner argues generally that the state court's "disposition of the issue was unreasonable." ECF No. 54 at 19. The undersigned disagrees.

Upon consideration of the record and the filings before the Court, and mindful of the "doubly" deferential standard applied on habeas review, the undersigned finds that the PCR Court's conclusion that Petitioner's trial counsel was not ineffective for failing to object to the officers' hearsay testimony was neither unreasonable nor based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Valentino*, 972 F.3d at 580. First, the record fails to demonstrate that the PCR Court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Furthermore, the PCR Court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Applying prong two, the PCR Court found no prejudice, concluding that "there is no possibility the outcome of the trial would have been different if a proper objection had been made" because "Mr. Koenig himself testified he was absolutely sure of his identification . . . and any bolstering by Gardner and McMillan was of no significance." ECF No. 39-9 at 118. Petitioner has not shown that this determination was unreasonable. *Valentino*, 972 F.3d at 580. Accordingly, Ground Two (16) is without merit, such that summary judgment in favor of Respondent is warranted.

## III. GROUND ONE – ACTUAL INNOCENCE

In Ground One of the Amended Petition, Petitioner raises a claim of actual innocence, asserting as follows:

> Petitioner was tried for a crime which he had a valid alibi placing him in a different county than where the Prosecution stated the crime occurred or the alleged eyewitness that stated the Petitioner was seen; Prosecution vindictively sought a conviction against the Petitioner knowing that the Petitioner was no where near the scene of the crime during any of the time frames alleged by any witness produced by the Prosecution; and Petitioner had no part in the alleged crime.

ECF No. 15 at 6. Petitioner also asserts that he did not raise this issue in state court on direct appeal or in his PCR application, arguing that he "could not have exhausted his state court remedies regarding Ground One, as the only platform for Ground One is this jurisdiction." *Id.*

In its Return, Respondent argues that "Petitioner has presented no new factual support for his actual innocence claim but appears to attempt to bypass procedural bars by raising an issue regarding his alibi defense." ECF No. 39 at 19 (further arguing that in the Amended Petition, "Petitioner himself notes that Ground Two [(8)] - which is a claim that trial counsel failed to properly investigate alibi witnesses - is abandoned."). Respondent contends that Petitioner has not met the standard to allow him to bypass the procedural default of the alibi defense issue, nor has he satisfied the "extraordinarily high" threshold for consideration of any hypothetical freestanding innocence claim. *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 392, 417 (1993)).

In his Response, Petitioner expressly "assert[s] that his actual innocence claim is free standing," further arguing as follows:

> Petitioner showed in the state court through his PCR that trial counsel was ineffective in failing to investigate his alibi witnesses for trial purposes. The evidence presented at PCR, if presented at trial, would more than likely render a not guilty verdict beyond a reasonable doubt from reasonable jurors, had trial counsel presented the Petitioner's alibi defense, the Petitioner would have overcome the findings of guilty and the evidence presented at PCR would have showed the jury during trial that the Petitioner was indeed no where near the scene of the crime at the time of the crime. . . .
>
> In the present case, the Petitioner presented exculpatory scientific evidence during his PCR that was apparently not available at the Petitioner's trial when he alleged that he received ineffective assistance from his trial counsel when trial counsel failed to present an alibi defense after the Petitioner informed trial counsel that he could not be guilty of any crime based on the mere fact that he was no where near

> the scene of the crime contrary to the testimony provided by the State's witness.
>
> The evidence presented at PCR is contradictive to the testimony provided by witnesses of the prosecution as Cell Phone Records indicates that the Petitioner was in a different county th[a]n where the prosecution alleged during the court of trial. Therefore, the Petitioner shows that the claim of actual innocence is indeed valid and substantial, and that a fundamental miscarriage of justice occurred in the prosecution's vindictive attempt to seek conviction of an innocent person and no fact finder would find the Petitioner guilty beyond a reasonable doubt in the evidence offered during the PCR was sought and presented during the court of trial.

ECF No. 54 at 9–11 (footnote omitted).

Upon review, the undersigned finds that summary judgment as to Ground One is warranted. "A habeas petitioner may generally use alleged newly discovered evidence of actual innocence as a gateway for the consideration of otherwise procedurally barred claims." *In re Stewart*, 78 F.4th 690, 697 (4th Cir. 2023); *see Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) ("Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief." (citations omitted)). However, "the Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief: 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Buckner*, 453 F.3d at 199 (quoting *Herrera*, 506 U.S. at 400); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.").

In *Herrera*, the Supreme Court "assume[d], for the sake of argument . . . that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional" could possibly be reached if no state remedy was first available, but cautioned that even then "the threshold showing for such . . . would necessarily be

extraordinarily high." 506 U.S. at 417. However, in the more than 30 years since *Herrera* was decided, "neither the Supreme Court nor [the Fourth Circuit] has ever permitted federal habeas relief on a claim of actual innocence 'based on newly discovered evidence . . . absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *In re Stewart*, 78 F.4th at 700 & n.9 (quoting *Herrera*, 506 U.S. at 400).

Here, Petitioner concedes that he is asserting a "free standing" claim of actual innocence and not attempting to rely on an allegation of actual innocence as cause to excuse a default. ECF No. 54 at 9. However, it is not clear that such a claim is cognizable at all, let alone in a non-capital case, such as this one. *See McQuiggin*, 569 U.S. at 392; *Herrera*, 506 U.S. at 404–05. Moreover, Petitioner was not barred from presenting his argument on a proposed alibi. Indeed, Petitioner claimed in his PCR action that trial counsel erred in failing to present certain alibi witnesses (Calvin Davis and Glenn Moses, along with "others"), erred in presenting testimony from Petitioner's brother that undermined Petitioner's alibi, and erred in not offering a telecommunications expert to support an alibi defense. However, Petitioner abandoned the ineffective assistance claim regarding investigation into potential alibi witnesses on appeal and simply did not prevail on his remaining claims.

On this record, Petitioner cannot make the threshold showing of having no opportunity to present his claim of innocence based on assertion of an alibi. Accordingly, the undersigned recommends summary judgment be granted in favor of Respondent on Ground One.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion for Summary Judgment (ECF No. 40) be **GRANTED** and that the Amended Petition (ECF No. 15) be **DISMISSED with prejudice.**

Molly H. Cherry

July 28, 2026
Charleston, South Carolina

Molly H. Cherry
United States Magistrate Judge

**The parties are directed to the next page for their rights to file objections to this recommendation.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).